# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Misc. No. 17-204-GLT |
| | Chapter 13 |
| **SELECTED CASES IN WHICH WELLS FARGO BANK, N.A. SEEKS RELIEF AGAINST SELECTED DEBTOR(S) AND/OR RONDA J. WINNECOUR, STANDING CHAPTER 13 TRUSTEE FOR THE WESTERN DISTRICT OF PENNSYLVANIA,** | |
| **WELLS FARGO BANK, N.A.**, | Consolidated for Administrative Purposes |
| *Plaintiff*, | Related to Dkt. Nos. 149, 155 |
| v. | |
| **SELECTED DEBTOR(S) AND/OR RONDA J. WINNECOUR, STANDING CHAPTER 13 TRUSTEE FOR THE WESTERN DISTRICT OF PENNSYLVANIA,** | |
| *Defendants*. | |

Terry A. Shulsky, Esq.
James D. Newell, Esq.
Buchanan Ingersoll & Rooney PC
Pittsburgh, PA
Attorneys for the Wells Fargo Bank, N.A.

Owen W. Katz, Esq.
Office of the Chapter 13 Trustee
Pittsburgh, PA
Attorney for Ronda J. Winnecour

Abagale E. Steidl, Esq.
Steidl & Steinberg, P.C.
Pittsburgh, PA
Attorney for the Selected Debtors

**MEMORANDUM OPINION**

The matters before the Court are the *Joint Motion[s] For Leave to File Unredacted Settlement Agreement [under Seal]* (the "Motions") filed by Wells Fargo Bank, N.A., Ronda J. Winnecour, the chapter 13 trustee (the "Trustee"), and the "Selected Debtors."[1] Through the Motions, the parties seek to seal the amounts that will be paid to the Trustee and Steidl & Steinberg, counsel to the Selected Debtors, (the "Settlement Amounts") as part of a settlement of their respective claims and counterclaims under the Real Estate Settlement Procedures Act of 1974 ("RESPA").[2] For the reasons set forth below, the Court will deny the Motions.

## I. BACKGROUND

In early 2017, Wells Fargo received a series of identical qualified written requests under RESPA from the Trustee and the Selected Debtors. The requests sought information and documentation related to Chapter 13 debtors who were impacted by a settlement agreement between Wells Fargo and the United States Trustee. In response, Wells Fargo commenced seventy-seven adversary proceedings seeking a declaratory judgment that the qualified written requests were overbroad and unduly burdensome under RESPA, thus relieving it of the obligation to respond. It also challenged the Trustee's standing to make such requests on behalf of Chapter 13 debtors. The individual adversary proceedings were consolidated for administrative purposes into the above-captioned miscellaneous proceeding. The Trustee and the Selected Debtors then filed answers and counterclaims seeking the information sought by the qualified written requests, as well as statutory damages, attorneys' fees, and expenses.

---

[1] The Selected Debtors are: Todd M. Graham, Timothy J. Negley, Nicole L. Negley, Gerald A. Shinsky, Jenny L. Shinsky, Jerome P. Broderick, Jr., Elizabeth I. Broderick, Michael R. Pointer, Kirby A. Decroo, Jr., David M. Brink, Rita W. Brink, Bruce W. Jackson, Edna L. Jackson, Anthony J. Bzdziak, Jr., Debra S. Bzdziak, David I. Scott, Sr., William G. Stayduhar, and Donna M. Stayduhar.

[2] 12 U.S.C. § 2601, et seq.

Having apparently resolved their dispute, the parties now seek approval of their settlement agreements after unredacted copies are placed under seal. Each settlement agreement provides that, in exchange for mutual releases, Wells Fargo will, *inter alia*, pay a "confidential sum" to both the Trustee and Steidl & Steinberg as reimbursement of the fees and expenses incurred in the litigation.[3] The sole articulated basis for sealing the Settlement Amounts is "to avoid establishing a threshold with respect to any amounts Wells Fargo may agree to pay in order to settle similar litigation with other parties."[4] The parties do not cite any legal authority in support of sealing the Settlement Amounts.

**II. JURISDICTION**

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b).

---

[3] Redacted copies of the agreements were attached to separate motions seeking approval of the settlements. The Court notes that each settlement agreement contains a substantively similar payment confidentiality provision that provides in relevant part:

> The Parties agree that the dollar amount of any payments made by Wells Fargo to [the Trustee/Steidl & Steinberg] shall be forever treated as confidential and shall not be disclosed or released to any persons except properly interested parties . . . *or as may be required by law*.

Exhibit 1 at ¶ 7, Docket No. 147-1; Exhibit 1 at ¶ 6, Docket No. 153-1 (emphasis added). Accordingly, the settlements are not contingent on the Court granting the Motions.

[4] Docket No. 149 at ¶ 9; Docket No. 155 at ¶ 9.

**III. DISCUSSION**

Section 107(a) of the Bankruptcy Code expressly provides that "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge," creating a presumption of public access to all documents filed with the Court.[5] Pursuant to subsections (b) and (c), the Court may nonetheless restrict access to papers in order to protect: (1) the name of a minor child;[6] (2) an individual's personally identifying information;[7] (3) "a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title;"[8] or (4) "an entity with respect to a trade secret or confidential research, development, or commercial information."[9] The moving party has the burden of *establishing through evidence* that the information should be protected.[10]

Obviously, the Settlement Amount is not the name of a minor child, personally identifying information, or a scandalous or defamatory matter. Nor can there be any plausible assertion that it is a trade secret, confidential research, or development. That leaves "commercial information" as the only remaining possibility, but "[i]nformation is not considered 'commercial' merely because it relates to business affairs."[11] To the contrary, the "commercial information" exception only protects "information which would cause 'an unfair advantage to competitors by

---

[5]     11 U.S.C. § 107(a).

[6]     11 U.S.C. § 107(a); see also 11 U.S.C. § 112.

[7]     11 U.S.C. § 107(c)(1); see also Fed. R. Bankr. P. 9037.

[8]     11 U.S.C. § 107(b)(2).

[9]     11 U.S.C. § 107(b)(1).

[10]    In re Waring, 406 B.R. 763, 768 (Bankr. N.D. Ohio 2009); see also Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.), 561 B.R. 36, 43 (Bankr. S.D.N.Y. 2016) ("Evidence—not just argument—is required to support the extraordinary remedy of sealing.").

[11]    Togut v. Deutsche Bank AG (In re Anthracite Capital, Inc.), 492 B.R. 162, 178 (Bankr. S.D.N.Y. 2013).

providing them information as to the commercial operations'" of the movant.[12] It simply does not "offer a safe harbor for those who crave privacy or secrecy for its own sake."[13] For this reason, there appears to be unanimous agreement among courts that the terms of a settlement agreement, including the amount of any settlement payments, are not "commercial information" and, therefore, should not be restricted from public view.[14] The Court shares this view, and finds the protection of Wells Fargo's bargaining position in other similar, but unrelated, litigation an inadequate basis for relief under 11 U.S.C. § 107(b).

---

[12] Video Software Dealers Assoc. v. Orion Pictures Corp. (In re Orion Pictures Corp.), 21 F.3d 24, 27 (2d Cir. 1994) (quoting Ad Hoc Protective Comm. for 10 1/2% Debenture Holders v. Itel Corp. (In re Itel Corp.), 17 B.R. 942, 944 (B.A.P. 9th Cir. 1982)).

[13] Gowan v. Westford Asset Mgmt. LLC (In re Dreier LLP), 485 B.R. 821, 822–23 (Bankr. S.D.N.Y. 2013).

[14] See Geltzer v. Andersen Worldwide, S.C., No. 05 CIV. 3339 (GEL), 2007 WL 273526, at *4 (S.D.N.Y. Jan. 30, 2007) ("There is no discernable public interest, or interest of the bankruptcy estates, in preserving [a defendant's] 'leverage' as against other parties who have sued it. Nor has the movant indicated any authority to support its implicit proposition that protecting the bargaining position of the defendant in other, unrelated cases, is even a proper consideration of a court being asked to approve a settlement in a given case."); In re Thomas, 583 B.R. 385, 392 (Bankr. E.D. Ky. 2018) ("courts across the country have held that settlement terms (including settlement amount) are not confidential 'commercial information' that is subject to seal under § 107(b)(1)."); In re Gibbs, No. 11-03070, 2017 WL 6506324, at *2 (Bankr. D. Haw. Dec. 19, 2017) ("The filings make clear that BANA is not really concerned about its competitors. Rather, it worries that, if the settlement amount in this case is disclosed, other parties claiming that BANA engaged in wrongful foreclosure conduct will demand similar amounts."); In re Chitwood, No. 6:11-BK-14441-CCJ, 2015 WL 7180624, at *2 (Bankr. M.D. Fla. July 23, 2015) (finding settlement agreement does not fall within the ambit of 11 U.S.C. § 107(b)); In re Anthracite Capital, Inc., 492 B.R. 162, 174 (Bankr. S.D.N.Y. 2013) ("It is clear that without meeting one of the explicit exceptions under § 107(b), the existence of a settlement is not a proper reason to seal the documents."); In re Oldco M Corp., 466 B.R. 234, 238 (Bankr.S.D.N.Y. 2012) ("[s]ettlements are entitled to no greater protection than any other requests for relief from bankruptcy courts."); In re Blake, 452 B.R. 1, 13 (Bankr. D. Mass. 2011) (finding "that confidentiality of the settlement amount was inconsistent with the Court's responsibility to maintain the integrity of the bankruptcy system."); In re Quigley Co., Inc., 437 B.R. 102 (Bankr. S.D. N.Y. 2010) (the amounts for which the Chapter 11 debtor's parent settled asbestos personal injury claims was not "commercial information" entitled to protection from disclosure); In re Alterra Healthcare Corp., 353 B.R. 66, 76 (Bankr. D. Del. 2006) ("The Court concludes that the information in the settlements is not confidential commercial information. It does not relate to the Reorganized Debtor's commercial operations nor does it unfairly advantage competitors.").

## IV. CONCLUSION

In light of the foregoing, the Court will deny the Motions. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

Dated: February 14, 2019

Case administrator to mail to:
Terry A. Shulsky, Esq.
Abagale E. Steidl, Esq.
Owen W. Katz, Esq.